UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-21934-Civ-GOLD
MAGISTRATE JUDGE P.A. WHITE

JOSHUA D. CLARKE,                    :

    Petitioner,                  :

v.                                   :          REPORT OF
                                                MAGISTRATE JUDGE
WALTER A. McNEIL,                    :

      Respondent.            :
_____

I.   Introduction

Joshua D. Clark, a state prisoner confined at South Bay
Correctional Institution at South Bay, Florida has filed a pro se
petition for writ of habeas corpus pursuant to 28 U.S.C. §2254,
attacking his convictions and sentences entered in Case No. 99-
19708 in the Circuit Court of the Eleventh Judicial Circuit of
Florida, at Miami-Dade County. Counsel has now been appointed by
this Court to represent Clarke, and he is represented by the
Federal Public Defender. (DE# 50, 51).

The case is currently on remand from the Eleventh Circuit
Court of Appeals and has been re-referred to the undersigned for
consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and
Rules 8 and 10 of the Rules Governing Section 2254 Cases in the
United States District Courts.

For its consideration of the petition with supporting
memorandum of law (DE# 1, 3), the Court has the  respondent's
responses to an order to show cause and supplemental order to show
cause with multiple exhibits (DE# 9, 14, 43, 44), and the

1

petitioner's <u>pro</u> <u>se</u> reply to the supplemental response (DE# 49). The Court also has the Petitioner's subsequent pleadings filed through appointed counsel (DE# 55, 59), and the respondent's response to the memorandum filed by appointed counsel (DE# 58).

For the reasons stated below, the undersigned concludes that Petitioner's constitutional rights have been violated in connection with the convictions and sentences entered as to Counts 7-10 of the Information, and it is recommended that the petition be conditionally granted and that the writ should issue, requiring Clarke's release from imprisonment, unless the State of Florida retries Clarke within ninety days on any and all appropriate criminal charges.

## II.  <u>Claims</u>

The petitioner raises the following claims:

1.  The trial court committed fundamental error by allowing a sleeping juror to remain on the jury panel.

2.  He received ineffective assistance of trial counsel, because his lawyer failed to protect his constitutional right of a fair trial by a jury of his peers.

3.  The offense of felony causing bodily injury is a non-existent offense, and therefore his sentence is unlawful.

4.  His due process rights were violated, because he was convicted of a non-existent crime, felony causing bodily injury.

## III.  <u>Background and Procedural History</u>

Clarke was charged by Information with six counts of robbery using a deadly weapon and four counts of felony causing bodily injury. (Volume I of Respondent's Appendix at 1-10)(DE# 14). Clarke was convicted after jury trial of six counts of attempted robbery (a lesser included offense) and four counts of felony causing

bodily injury. <u>Id</u>. at 14. Clarke was sentenced on the attempted robbery convictions to five years' imprisonment and life imprisonment on the convictions of felony causing bodily injury as a prison releasee reoffender. <u>Id</u>. at 15-16. Clarke was permitted to pursue a belated direct appeal and he raised the following sole claim:

> Fundamental error occurred where the trial court failed to instruct the jury of an essential element of felony causing bodily injury, in violation of the defendant's rights under article 1, section 9 of the Florida Constitution and the 14th Amendment of the United States Constitution.

<u>See</u> Initial Brief of Appellant. (Volume I of Respondent's Appendix at 20-34)(DE# 14). Clarke contended that the trial court had failed to instruct the jury that the intentional act causing the injury must not be an essential element of the underlying felony, which in this case was robbery or attempted robbery. <u>Id</u>. The Florida Third District Court of Appeal affirmed the convictions and sentences in a decision without written opinion, *sub nom*. <u>Clark v. State</u>, 842 So.2d 119 (Fla. 3 DCA 2003)(table).

After the direct appeal proceedings had concluded, Clarke, proceeding <u>pro se</u>, embarked on a lengthy campaign for state collateral relief in the state trial and appellate courts, challenging his convictions and sentences pursuant to <u>Fla.R.Crim.P</u>. 3.800 and 3.850. He also filed a state petition for writ of habeas corpus.[1] His postconviction challenges were unsuccessful. <u>See e.g.</u>, Order Denying Motion to Correct Illegal Sentencing Error (Volume II of Respondent's Appendix at 368); Order Denying the Defendant's Motion for Post-Conviction Relief at 1 (Volume I of Respondent's

---

[1] All postconviction proceedings have been described accurately and in great detail in the respondents's Response to Order to Show Cause at 2-14. (DE# 43). <u>See also</u> Appendix to Response to Petition for Writ of Habeas Corpus. (DE# 14, 44).

Appendix at 81); <u>Clarke v. State</u>, 925 So.2d 1033 (Fla. 3 DCA 2006)(table); <u>Clarke v. State</u>, 959 So.2d 736 (Fla. 3 DCA 2007)(table).

Clarke then came to this Court, filing the instant habeas corpus petition. The petition was initially dismissed as time-barred. (DE# 19, 21). Clarke took an appeal to the Eleventh Circuit Court of Appeals and while the appeal was pending the United States Supreme Court decided <u>Jimenez v. Quarterman</u>, 555 U.S. ___, ___, 129 S.Ct. 681, 686 (2009)(holding that "where a state court grants a criminal defendant the right to file an out-of-time direct appeal during state collateral review, but before the defendant has first sought federal habeas relief, his judgment is not yet 'final' for purposes of §2244(d) (1)(A)."). The Eleventh Circuit held that pursuant to *Jimenez*, Clarke was entitled to tolling time for the 159-day delay between Clarke's conviction and petition for belated direct appeal for purposes of limitations under the Antiterrorism and Effective Death Penalty Act of 1996. <u>See</u> <u>Clarke v. Dep't Corr. of Florida</u>, 566 F.3d 1278 (11 Cir. 2009). The Eleventh Circuit reversed the dismissal of the petition by this Court and remanded the case for further proceedings in light of *Jimenez*. <u>Id</u>. The Honorable Alan S. Gold, United States District Judge, then re-referred this case to the undersigned for a supplemental Report and Recommendation, taking into account the Eleventh Circuit's decision issued on May 7, 2009, and *Jimenez*. <u>See</u> Order Referring Case to Magistrate Judge Patrick A. White. (DE# 37)

After the Eleventh Circuit remand, the respondent filed a supplemental response along with a copy of the trial transcript, as

ordered.[2] (DE# 43, 44). The petitioner filed a <u>pro</u> <u>se</u> reply to the supplemental response (DE# 49). After full review of the file and review of applicable federal and state law principles, it appeared that Clarke may have been convicted of a nonexistent crime, as he claimed in grounds three and four of the petition. His claims were, therefore, not patently frivolous and found to be possibly meritorious. It was decided that further briefing and possibly oral argument were necessary to assist this Court in disposing of grounds three and four of the instant petition. Accordingly, Clark was appointed counsel to assist him in this habeas corpus proceeding. The record now includes supplemental briefing as to claims three and four by both the Petitioner and Respondent. (DE# 50, 55, 58, 59).

IV. <u>Threshold Issues- Timeliness, Exhaustion and Procedural Bar</u>

The respondent now concedes that the instant petition has been timely filed,[3] <u>see</u> 28 U.S.C. §2244(d), <u>Jimenez v. Quarterman</u>, 555 U.S. _____, 129 S.Ct. 681, 686 (2009) and has further conceded that all claims of this federal petition have been properly exhausted before the state courts, <u>see</u> 28 U.S.C. §2254(b)(1) and (b)(1)(A)(A state prisoner's habeas corpus petition "shall not be granted unless it appears that----the applicant has exhausted the

---

[2]The respondent in his initial response to the order to show cause, solely asserted that the instant petition was time-barred. (DE# 9). There was, therefore, no discussion whatever on the merits of the issues raised in the petition. <u>Id</u>. Further, the respondent sought and was granted leave to delay producing a copy of the trial transcript. (DE# 11, 16). Since the record was incomplete for disposition of the petition by the undersigned, a supplemental order was issued, requiring additional briefing and records. (DE# 39).

[3]Review of the record in light of *Jimenez* reveals that the instant petition was timely filed, as properly conceded by the respondent. <u>See</u> <u>Jimenez v. Quarterman</u>, 555 U.S. ___, ___, 129 S.Ct. 681, 686 (2009).

remedies available in the courts of the State....").[4] The
respondent has addressed all claims on the merits.

## V.  Standard of Review

Petitioner filed his petition after April 24, 1996, the
effective date of the Antiterrorism and Effective Death Penalty Act
of 1996 (AEDPA), Pub.L. No. 104-132, 110 Stat. 1214 (1996).
Post-AEDPA law, therefore, governs this action. Abdul-Kabir v.
Quarterman, 550 U.S. 233, 127 S.Ct. 1654, 1664, 167 L.Ed.2d 585
(2007); Penry v. Johnson, 532 U.S. 782, 792, 121 S.Ct. 1910, 150
L.Ed.2d 9 (2001); Davis v. Jones, 506 F.3d 1325, 1331, n .9 (11
Cir. 2007). It is important to recognize just how limited is this
Court's review in a habeas proceeding. The Antiterrorism and
Effective Death Penalty Act of 1996 (AEDPA), Pub.L .No. 104-132,
110 Stat. 1214 (1996), provides that a federal court may not grant
the writ unless the state court adjudication on the merits either:

> (1) resulted in a decision that was contrary to, or involved
> an unreasonable application of, clearly established Federal
> law, as determined by the Supreme Court of the United States;
> or
>
> (2) resulted in a decision that was based upon an unreasonable
> determination of the facts in light of the evidence presented
> in the State court proceeding.

28 U.S.C. §2254(d).

---

[4]An applicant's federal writ of habeas corpus will not be granted unless
the applicant exhausted his state court remedies. 28 U.S.C. §2254(b),(c). A claim
must be presented to the highest court of the state to satisfy the exhaustion of
state court remedies requirement. O'Sullivan v. Boerckel, 526 U.S. 838 (1999);
Richardson v. Procunier, 762 F.2d 429, 430 (5 Cir. 1985); Carter v. Estelle, 677
F.2d 427, 443 (5 Cir. 1982), cert. denied, 460 U.S. 1056 (1983). A petitioner is
required to present his claims to the state courts such that they are permitted
the "opportunity to apply controlling legal principles to the facts bearing upon
[his] constitutional claim." Picard v. Connor, 404 U.S. 270-275-77 (1971).
Exhaustion is ordinarily accomplished on direct appeal. If not, in Florida, it
may be accomplished by the filing of a Rule 3.850 motion, and an appeal from its
denial; Leonard v. Wainwright, 601 F.2d 807, 808 (5 Cir. 1979), or, in the case
of a challenge to a sentence, by the filing of a Rule 3.800 motion, and an appeal
from its denial. See Caraballo v. State, 805 So.2d 882 (Fla. 2 DCA 2001).

As the United States Supreme Court explained in <u>Williams v. Taylor</u>, 529 U.S. 362, 412-13 (2000):

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

In deciding whether a state court ruling involved an "unreasonable application" of federal law, this Court does not focus merely upon whether the state court decision was erroneous or incorrect; rather, this Court may issue a writ of habeas corpus only if the state court's application of clearly-established federal law was objectively unreasonable. *See id*. at 409-11. <u>See also</u> <u>Knowles v. Mirzayance</u>, ___ U.S. ___, 129 S.Ct. 1411, 1418 (2009).

The statutory phrase "clearly established Federal law" "refers to the holdings, as opposed to the dicta, of [the U.S. Supreme] Court's decisions as of the time of the relevant state-court decision." <u>Williams v. Taylor</u>, 529 U.S. at 412, 120 S.Ct. at 1523 (majority opinion by O'Connor, J.). Findings of fact by the state court are presumed correct, and the petitioner bears the burden of rebutting that presumption of correctness by clear and convincing evidence. <u>See</u> 28 U.S.C. §2254(e)(1); <u>Crowe v. Hall</u>, 490 F.3d 840, 844 (11 Cir. 2007), *cert. denied*, 553 U.S. 1007 (2008).

## VI. <u>Facts</u>

In brief, the facts of this case as gleaned from the evidence admitted at trial are as follow.[5] After their work day had ended on

---

[5]The four-volume trial transcript can be found at DE# 44.

June 10, 1999, five forklift operators employed at a Publix Warehouse, Joseph Eaford, Perry Nemrod, Ronald Starks, William Rush, and Caven Morgan, met at a nearby Shell gasoline station to relax before going home. See Trial Transcript at 206-208, 235-37, 288-90, 312-14. Michael McGuire, a friend of Nemrod, also joined the group. Id. at 301-03. Shortly thereafter, two unknown individuals dressed in blue coveralls approached the group and demanded that the men hand over their valuables. Id. at 212-14, 237-42, 264-65, 290-95, 303-05, 314-16. One of the perpetrators carried a shotgun while the other carried a blue bag. Id. After collecting property from the six men, the robbers decided to check the victims' cars for property. Id. at 215-16, 242, 295-96, 316. As the gunman turned towards one of the cars, Eaford pulled out a firearm that he had hidden on his person and opened fire upon the robbers. Id. at 243, 272, 296-97, 306. The gunman returned fire, striking Rush, Morgan, Eaford and Starks with shotgun pellets. Id. at 217, 243-44, 273-74, 297. Both assailants took off on foot and the police arrived soon after. Id. at 244, 297, 318, 320-21. Some time not long after the subject incident, police officers were dispatched to an apartment complex in the vicinity of the gasoline station where the robbery occurred to investigate a shooting. Id. at 333-39. The officers found Clarke and Cubrill Rolle there, alleged victims of a robbery. Id. at 333-39. Rolle was wearing a blue coverall and was seriously injured with a gunshot wound to the ankle. Id. at 334-35, 344. Clarke was wearing an orange and white shirt and jeans, and was shot in the buttocks. Id. at 334, 337. Although the identifications were conflicting, several of the victims identified Clarke as the perpetrator holding the bag and Rolle as the armed perpetrator. Id. at 246-47, 277-78, 280, 299, 307, 308.

## VII.   Discussion

8

A.   <u>Claims One and Two</u>

Clarke claims in ground one that the trial court committed fundamental error by allowing a sleeping juror to remain on the jury panel. In related ground two, Clarke alleges that he received ineffective assistance of trial counsel, because his lawyer failed to protect his constitutional right to a fair trial by a jury of his peers when he took no action with regard to the sleeping juror.[6] These claims are meritless.

The record reveals as follows. After closing arguments had been made, a brief recess was called by the trial court. <u>See</u> Trial Transcript at 512. After the recess, but before the jury returned to the courtroom, the trial court stated as follows:

> Myself and several of my staff noticed that Number 3 Juror, Mr. Guerrero, during closing arguments, particularly during the State's closing arguments was completely asleep. Not dozed off, but his eyes closed. And I guess he realized – – he tried to perk himself up, and he began to lean forward against the front row. Just an observation. OK? I am not asking anything. I just wanted to inform you that that was observed by myself, and I believe by [the court reporter] and by my judicial assistance, Ana, in the back.

<u>Id</u>. The trial court then asked the state if it had any comment with

---

[6]To prevail on a claim of ineffective assistance, a petitioner must demonstrate both that his attorney's efforts fell below constitutional standards, and that he suffered prejudice as a result. <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). Counsel's performance is deficient only if it falls below the wide range of competence demanded of attorneys in criminal cases. <u>Id</u>. at 688; <u>Heath v. Jones</u>, 941 F.2d 1126, 1130 (11 Cir. 1991). "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." <u>Strickland</u>, 466 U.S. at 688. A habeas court's review of a claim under the <i>Strickland</i> standard is "doubly deferential." <u>Knowles v. Mirzayance</u>, ___ U.S. ___, 129 S.Ct. 1411, 1420, 173 L.Ed.2d 251 (2009), <i>citing</i>, <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5-6, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003)(per curiam). The relevant question "is not whether a federal court believes the state court's determination under the <i>Strickland</i> standard was incorrect but whether that determination was unreasonable-a substantially higher threshold." <u>Knowles</u>, 129 S.Ct. at 1420. (citations omitted). Finally, "because the <i>Strickland</i> standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." <u>Id</u>.

regard to Juror Number 3, and the prosecutor responded:

> I saw him doing some nodding, but maybe it says more about the boring nature of my closing argument. He seemed to be alert during evidence last week, so I don't have a problem. If you want to individually bring him in and ask him a question.

Id. at 514. The court declined to individually question the subject juror, stating that "I'm not going to embarrass him that way." Id. When the court asked trial counsel if he had any comment with regard to Juror Number 3, trial counsel simply answered: "No." Id.

Claims one and two were raised and rejected in Clarke's pro se Rule 3.850 motion,[7] with the trial court stating as follows in its written order finding the claims meritless:

> As to Defendant's issues #1 and #2 claiming that a juror was asleep, the only behavior of Juror #3 that was noted on the record was that his eyes were closed. At Page 512, Line 19, the Court specifically noted that he had not "dozed off." Additionally, at Page 514, Line 5, it was noted that Juror #3 had been continuously alert during the presentation of evidence during the previous week of trial. Based upon the foregoing matters in the trial transcript, the defendant's claim on these two issues is denied without further hearing. Pages 512 through 514 of the trial transcript are attached in this Order.

(Order Denying the Defendant's Motion for Post-Conviction Relief at 1).[8] The trial court's ruling was per curiam affirmed by the Florida Third District Court of Appeal in a decision without written opinion. See Clarke v. State, 925 So.2d 1033 (Fla. 3 DCA 2006)(table).

The state courts properly denied Clarke postconviction relief on these claims. The record reveals that one juror may have had his

---

[7] See Volume I of Respondent's Appendix at 72-5.

[8] See Volume I of Respondent's Appendix at 81.

eyes closed, or had possibly even been asleep, for a brief period of time during a portion of the state's closing argument. There was no evidence whatever that that particular juror, or any other juror, was in fact asleep during the evidentiary portion of the trial and/or trial counsel's closing argument. In fact, the record reveals otherwise through the comments of the prosecutor. See Trial Transcript at 514. The record further indicates that any request by trial counsel to the court to voir dire the juror would not have been successful. Finally, the record does not demonstrate that trial counsel's decision not to seek a mistrial and to keep Guerrero, Juror #3, as a juror was rooted in anything other than sound trial strategy based upon the circumstances of the case.[9] It appears that no action was taken by counsel, because the defense preferred juror Guerrero to the designated alternate, Vivian Munoz.

Thus, Clarke's due process rights were not violated here and trial counsel did not render ineffective assistance by not pursuing the issue. Clarke cannot show that his counsel acted outside the wide range of reasonable professional assistance or that there was a reasonable probability of a different outcome had his counsel moved for a mistrial or removed the juror. As indicated, even if the subject juror had in fact been asleep during the trial, it was for a brief period of time and during the state's closing argument. See United States v. Springfield, 829 F.2d 860, 864 (9 Cir.

---

[9]Scrutiny of an attorney's performance is highly deferential. Reviewing courts will not second-guess strategic decisions; rather, the attorney's performance is evaluated in light of all the circumstances as they existed at the time of the conduct, and is presumed to have been adequate. Strickland v. Washington, 466 U.S. 668, 689-90 (1984). Strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable. Id. at 690-91. Even if in retrospect the strategy to pursue one line of defense over another appears to have been wrong, the decision will be held ineffective only if it was so patently unreasonable that no competent attorney would have chosen it. Adams v. Wainwright, 709 F.2d 1443, 1145 (11 Cir. 1983). Accordingly, tactical or strategic choices by counsel cannot support a collateral claim of ineffective assistance. United States v. Costa, 691 F.2d 1358 (11 Cir. 1982); Coco v. United States, 569 F.2d 367 (5 Cir. 1978).

1987)(holding that not every incident of juror misconduct, including a sleeping juror, requires a new trial); <u>Lamar v. Graves</u>, 326 F.3d 983, 986 (8 Cir. 2003)(holding that it was not unreasonable application of clearly established federal law for state court to conclude that trial counsel was not ineffective when he did not object to juror sleeping during portion of state's case because he did not mind if juror missed part of state's presentation, and therefore habeas corpus relief was not warranted). <u>See also</u> <u>Gaston v. MacFarland</u>, 2005 WL 1828660, *8 (D.N.J. July 29, 2005)("Conflating a juror's claimed inattentiveness with a defense attorney's ineffectiveness in no way demonstrate that his counsel's performance was deficient as measured by an objective standard of reasonableness "under prevailing professional norms" or that petitioner was prejudiced by the performance); <u>Ciaprazi v. Senkowski</u>, 151 Fed.Appx. 62, 63-4 (2 Cir. 2005)(holding that trial counsel's decision not to object to juror who had possibly been sleeping may well have been based on his desire to retain the inattentive juror rather than to seek to replace him with an alternate and was, therefore, a strategic decision that did not constitute ineffective assistance of counsel).

Finally, based on a thorough review of the trial record, Clarke received a fair trial where the evidence admitted, which consisted of eyewitness testimony and Clarke's incriminating statements, was more than sufficient to support his convictions of attempted robbery (the lesser offenses charged in Counts 1-6 of the Information).[10] <u>See</u> <u>Jackson v. Virginia</u>, 443 U.S. 307, 326 (1979). Accordingly, the trial court's determination that Clarke was not

---

[10]For a thorough review of the evidence admitted at trial, with citations to the trial transcript, see the Response to Order to Show Cause at 15-21. (DE# 43). <u>See also</u> Trial Transcript. (DE# 44).

entitled to postconviction relief on his due process and related ineffective assistance of trial counsel claim, which ruling was affirmed on appeal, was not in conflict with clearly established federal law or based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Relief must therefore be denied pursuant to 28 U.S.C. §2254(d). Williams v. Taylor, 529 U.S. 362 (2000). "[A] state court's decision is not 'contrary to ... clearly established Federal law' simply because the court did not cite [Supreme Court] opinions.... [A] state court need not even be aware of [Supreme Court] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" Mitchell v. Esparza, 540 U.S. 12, 16 (2003)(quoting Early v. Packer, 537 U.S. 3, 7-8 (2002).

## B. Claims Three and Four

Clarke claims in grounds three and four that because the offense of felony causing bodily injury was a non-existent offense, he was wrongly convicted and sentenced as to Counts 7-10 of the Information. Specifically, he maintains that he was arrested in June 1999, of offenses committed in June 1999, and in 1998, Florida abolished the offense of felony causing bodily injury, Fla.Stat. §782.051. The identical claims were raised several times during postconviction proceedings with the trial court ruling as follows in one of the orders denying Clarke's motion to correct illegal sentence:

> [Clarke's] claim that he was convicted of a non-existent crime is without merit. [Clarke] was convicted of a violation of Florida Statutes 782.051. The only difference in the two versions of the statute are: 1) the title of the statute was changed from Felony Causing Bodily Injury to Attempted Felony Murder and 2) the addition of the requirement that the "intentional act" is not an essential element of the felony. Even the statute number has remained the same.

(Order Denying Motion to Correct Illegal Sentencing Error)(Volume

II of Respondent's Appendix at 368). The trial court's ruling was affirmed without written opinion by the state appellate court. See Clarke v. State, 959 So.2d 736 (Fla. 3 DCA 2007)(table).

In order to dispose of these claims, a brief review of the relevant Florida law is needed. In Amlotte v. State, 456 So.2d 448, 449 (Fla. 1984), the Florida Supreme Court found that attempted felony murder was a common law offense in Florida. However, the court subsequently receded from its holding in Amlotte. See State v. Gray, 654 So.2d 552, 552-53 (Fla. 1995). In response to the Florida Supreme Court's holding in Gray, the Florida Legislature in 1996, enacted section 782.051, Fla.Stat. which created the offense of "Felony causing bodily injury." See ch. 96-359, §1, at 2052, Laws of Fla. The former Fla.Stat. §782.051 (West Supp. 1996) provided in pertinent part as follows:

> (1) Any person who perpetrates or attempts to perpetrate any felony enumerated in s. 782.04(3)[11] and who commits, aids, or abets an act that causes bodily injury to another commits a felony of the first degree, punishable by imprisonment for a term of years not exceeding life....

Two years later, in 1998, the Florida Legislature substantially rewrote Section 782.051 and retitled it "Attempted felony murder." See Fla. Laws 1998, ch. 98-204, §12 at 1970. Section 782.051 (West Supp. 1998) currently states in pertinent part:

> (1) Any person who perpetrates or attempts to perpetrate any felony enumerated in s. 782.04(3) and who commits, aids, or abets an intentional act that is not an essential element of the felony and that could, but does not, cause the death of another commits a felony in the first degree,...

The 1998 amendment added the element of an intentional act that is

---

[11]Robbery is one of the offenses enumerated in §782.04(3). See Fla.Stat. §782.043(d).

not an essential element of the underlying felony. Id. Under the amended statute, the state has to prove that during the course of a felony, the defendant committed an intentional act, which was not an essential element of the underlying felony (i.e., robbery or attempted robbery here), which intentional act could, but did not, cause the death of another person. Thus, contrary to the former version of the statute, the state no longer has to prove actual injury, but it now has to prove the intentional act.

In this case, the first page of the Information specifies the crimes charged. See Information at 1. (Volume I of Respondent's Appendix at 1). As to Counts 7-10, Clarke was specifically charged with "FELONY CAUSING BODILY INJURY" and Fla.Stat. §§782.051(1) and 777.011 were identified as the applicable criminal statutes. Id. Further in the body of the Information, Clarke was more specifically charged in Count 7 of the Information in pertinent part as follows:

> And the aforesaid Assistant State Attorney, under oath, further information makes that CUBRILL ROLLE and JOSHUA CLARKE, on or about JUNE 10, 1999, in the County and State aforesaid, did unlawfully and feloniously perpetrate or attempt to perpetrate a felony to wit: robbery and did commit, aid, or abet an act that causes bodily injury to another, to wit: WILLIAM RUSH, by SHOOTING WILLIAM RUSH, and during the commission of said felony, the defendants carried, displayed, used, threatened, or attempted to use a firearm, in violation of s. 782.051(1) and s. 777.011, Fla. Stats., contrary to the form of the Statute in such cases made and provided, and against the peace and dignity of the State of Florida.

Id. at 7. (Volume I of Respondent's Appendix at 7). He was similarly charged in Counts 8, 9 and 10, except that the names of three other victims were substituted for that of victim William Rush. Id. at 8-10.

Clarke proceeded to trial on all offenses as charged in the

Information, which included felony causing bodily injury (Counts 7-10). After all evidence had been presented and arguments made, the trial court instructed the jury as follows as to Counts 7-10:

> Before you can find the defendant, Mr. Clarke, guilty of felony causing bodily injury, which is charged in Count VII, Count VIII, Count IX and Count X of the Information, the State must prove the following two elements beyond a reasonable doubt:
>
> Joshua Clarke did commit, aid or abet an act that caused bodily injury to the following gentlemen: Joseph Eaford, and/or Ronald Starks, and/or William Rush, and/or Caven Morgan.
>
> Two, Joshua Clarke did that act while engaged in the perpetration of or in an attempt to perpetrate any robbery.

(Trial Transcript at 520). Clarke was found guilty by the jury of committing the offenses charged in the Information as Counts 7-10 as well as attempted armed robbery, as a lesser included offense of robbery charged in Counts 1-6 of the Information. Id. at 556-557. The trial court entered Judgment, adjudicating Clarke guilty of the subject offenses, and in relevant part as to Counts 7-10 specified the crime as "FELONY CAUSING BODILY INJURY" in violation of Fla.Stat. §782.051(1). (Volume I of Respondent's Appendix at 256)(DE# 14).

Based upon the forgoing review of the applicable Florida law, it is clear that the revised statute requires the state to charge and prove that a defendant committed or attempted to commit an intentional act that was not an essential element of the underlying felony. See Moore v. State, 982 So.2d 1205, 1207 (Fla. 5 DCA 2008). This element was not required under the earlier version of the statute. Id. Clarke was not charged with the current version of the statute (i.e., attempted felony murder), with its new element, but Felony Causing Bodily Injury. In Moore, the Florida appellate court held that the information was fundamentally defective as it charged

16

a nonexistent crime in that the Information reflected language of the former statute, Felony Causing Bodily Injury, and the revised statute required the state to prove that defendant committed or attempted to commit an intentional act that was not an essential element of the underlying felony (i.e., attempted felony murder). Consequently, the court in *Moore*, reversed the conviction for the offense of causing bodily injury during the commission of a felony, finding it fundamentally defective as it charged a nonexistent crime. See generally King v. State, 800 So.2d 734 (Fla. 5 DCA 2001)(holding that to find a defendant guilty of attempted felony murder in violation of amended Fla.Stat. §782.051(1), he must be charged with the necessary element of having committed "an intentional act that is not an essential element of the underlying felony," and the jury must be instructed of that necessary element). The former offense of Felony Causing Bodily Injury and attempted felony murder are clearly different and distinct offenses. See Blockburger v. United States, 284 U.S. 299 (1932)(established test to determine whether separate convictions for different offenses arising from a single act are only permissible where each separate offense contains an element that the other lacks);[12] Fla.Stat. §775.021(4)(a).[13]

_____

[12]The "same-elements" test established in Blockburger v. United States, 284 U.S. 299 (1932), is applied to determine whether offenses are the "same offense" for double jeopardy purposes. The inquiry is whether each offense contains an element not contained in the other; if not, they are the "same offense" and double jeopardy bars additional punishment and successive prosecution. Id.

[13]Florida Statute §775.021(4)(a) provides that

Whoever, in the course of one criminal transaction or episode, commits an act or acts which constitute one or more separate criminal offenses, upon conviction and adjudication of guilt, shall be sentenced separately for each criminal offense; and the sentencing judge may order the sentences to be served concurrently or consecutively. For the purposes of this subsection, offenses are separate if each offense requires proof of an element that the other does not, without regard to the accusatory pleading or the proof adduced at trial.

Here, at the time that Clarke was charged and convicted there was no offense in Florida of "Felony Causing Bodily Injury." As such, as was true in *Moore*, the Information was fundamentally defective as it charged a nonexistent crime.[14] The trial court's jury instructions, which were also consistent with the 1996 version of the statute, were equally flawed further exacerbating the error. At no time was Clarke charged with the amended offense of attempted felony murder or the jury instructed as to that offense at the time of trial.

Contrary to the assertion of the respondent, the mere fact that the Information specified the correct charging statute certainly in no way cures the fundamental defects present in this case. The conviction of a defendant of a crime with which he was not charged and, accordingly, for which he was not lawfully tried, violates the constitutional requirements of the federal and state constitutions that an accused be informed of the accusation against him. See generally Stirone v. United States, 361 U.S. 212 (1960); Cole v. Arkansas, 333 U.S. 196, 201 (1948)(stating that, "No principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard

---

[14]Only when a charging document is so defective is a court deprived of jurisdiction. See generally DeBenedictis v. Wainwright, 674 F.2d 841, 842-43 (11 Cir. 1982), citing, Branch v. Estelle, 631 F.2d 1229, 1233 (5 Cir. 1980). A charging document that sets forth the elements of the offense in language clear enough to enable the defendant to plead a bar in jeopardy does not raise a jurisdictional defect. Alexander v. McCotter, 775 F.2d 595, 599 (5 Cir. 1985). Similarly, under Florida law principles, "[a]n information is fundamentally defective only when it totally omits an essential element of the crime or is so vague, indistinct or indefinite that the defendant is misled or exposed to double jeopardy." State v. Burnette, 881 So.2d 693, 694-95 (Fla. 1 DCA 2004); see Fla. R.Crim. P. 3.610. An "essential element" is one on which proof is required in order to establish a legal claim or criminal offense. Fla. Dep't of Revenue v. City of Gainesville, 918 So.2d 250, 264 (Fla. 2005).

in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal."); Markham v. United States, 160 U.S. 319 (1895). See also Jacob v. State, 651 So.2d 147 (Fla. 2 DCA 1995); Rose v. State, 507 So.2d 630 (Fla. 5 DCA 1987). Further, it is beyond dispute that the imposition of a conviction for a nonexistent offense violates the Due Process Clause of the Fourteenth Amendment. See Ex parte Royall, 117 U.S. 241, 248 (1886)(conviction under an unconstitutional law is void). "Nowhere in this country can any man be condemned for a nonexistent crime." Adams v. Murphy, 653 F.2d 224, 225 (5 Cir. 1981)(holding since there was no Florida crime of attempted perjury, petitioner could not legally be convicted of such offense, and therefore affirming district court's grant of petition for writ of habeas corpus on federal due process grounds after Supreme Court of Florida certified that petitioner's jury conviction of attempted perjury was not a crime under Florida law). Achin v. State, 436 So.2d 30, 30 (Fla. 1982)("[O]ne may never be convicted of a nonexistent crime").

Since Clarke was convicted of a nonexistent offense, there is a clear violation of federal due process principles, entitling Clarke habeas corpus relief under 28 U.S.C. §2254(d). See Clark v. Crosby, 335 F.3d 1303, 1313 (11 Cir. 2003)(Roney, J., dissenting), citing, Adams v. Murphy, 653 F.2d at 225.

It is noted that review of the record appears to indicate that the evidence presented at trial may have been sufficient to sustain convictions for the then-new offense, attempted felony murder, in that the acts of Clarke's co-perpetrator shooting and wounding the robbery victims occurred after the victims had turned over their valuables to Clarke. In other words, the use of force, the

shooting, was not itself an essential element of the underlying robbery and was an independent act as required by section 782.051(1). The shooting, therefore, may have constituted a wholly separate act and was not an essential element of the underlying attempted robbery, entitling a jury to convict Clarke for both attempted robbery and attempted felony murder. See e.g., Dallas v. State, 898 So.2d 163 (Fla. 4 DCA 2005)(holding that defendant's acts of shooting and wounding robbery victim occurred after the victim put his wallet on the car seat and started to run, and thus, the shooting constituted a wholly separate act and was not an element of the attempted robbery; therefore, jury was entitled to convict defendant for both attempted robbery and attempted felony murder).

Consequently, Clarke may possibly, under the facts and circumstances of this case, be retried if charged properly. As asserted by the Petitioner, that determination, however, should be made by the state courts.[15] See e.g., Adams v. Murphy, 653 F.2d 224 (affirming granting of writ of habeas corpus after finding that petitioner was convicted of nonexistent offense and that he could never be tried again for that offense); Achin v. State, 436 So.2d 30 (Fla. 1982)(finding that although defendant could not be

---

[15]It is noted that contrary to the respondent's argument in his Response to Memorandum of Law (DE# 58), a conviction for a non-existent crime is considered fundamental error and, therefore, may be raised at any time in the state courts (i.e., on direct appeal or during postconviction relief. See Barragan v. State, 957 So.2d 696, 697 (Fla. 5 DCA 2007), citing, Moore v. State, 924 So.2d 840 (Fla. 4 DCA 2006)(reversing denial of post-conviction relief where trial court erroneously ruled defendant was procedurally barred from raising claim that he had been convicted of non-existent offense); Fredericks v. State, 675 So.2d 989 (Fla. 1st DCA 1996)(holding that conviction of nonexistent crime is fundamental error mandating reversal even when error was invited by defendant, as by request for a jury instruction on a nonexistent offense). No procedural bars are applicable to the challenges now raised in grounds three and four of this petition. Moreover, as indicated herein, the challenges were raised in the Rule 3.800 proceeding and rejected on the merits with the rejection affirmed on appeal.

convicted of a nonexistent offense, he could, under the circumstances of that case, be retried). It is not appropriate for this Court in this particular case to mandate the precise remedy to be applied by the state court. See Barry v. Brower, 864 F.2d 294, 300 (3 Cir. 1988). As aptly stated by the Third Circuit in *Barry*:

> Both the historic nature of the writ and principles of federalism preclude a federal court's direct interference with a state court's conduct of state litigation. [citation omitted]. The writ of habeas corpus gives a court power to direct an official to produce the body of a person in custody in the court issuing the writ. The issuing court then has jurisdiction to free the person in custody from the restraints imposed upon his liberty if it determines the custody is illegal or illegally imposed. A habeas court does not have power to directly intervene in the process of the tribunal which has incorrectly subjected the petitioner to the custody of the respondent official.... The respect due the tribunals of a sovereign state within our federal system, however, requires that its courts be given an opportunity to correct their own errors.

Id. at 300-01.

In sum, Petitioner is entitled to habeas corpus relief on the claims raised here as grounds three and four because adjudication of the claims by the state courts was contrary to clearly established federal law and involved an unreasonable application of clearly established federal law. 28 U.S.C. §2254(d)(1); Williams v. Taylor, 529 U.S. 362, 412-13 (2000). See also Knowles v. Mirzayance, ___ U.S. ___, 129 S.Ct. 1411, 1418 (2009).

VIII.   Conclusion

Based upon the foregoing, it is recommended that the petition be DENIED as to the convictions and sentences entered as to Counts 1-6 of the Information.

It is further recommended that Clarke's petition be

21

conditionally GRANTED as to the convictions and sentences entered as to Counts 7-10. The writ should issue, resulting in Clarke's release from prison, unless the State of Florida may proceed under applicable state law principles and forthwith file an amended information, charging Joshua Clarke with any and all appropriate crimes, and then retry him on those offenses within a reasonable period, such as ninety days, subject to the provisions of Florida Rule of Criminal Procedure 3.191 and to any extensions or postponements for which Clarke or his own counsel may be responsible.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

SIGNED this 7th day of October, 2010.

_____

UNITED STATES MAGISTRATE JUDGE

cc:  Janice L. Bergmann, Asst. Federal Public Defender
     Federal Public Defender
     SouthTrust Tower
     One East Broward Boulevard
     Suite 100
     Ft. Lauderdale, FL 33301

     Heidi Milan Caballero, AAG
     Department of Legal Affairs
     444 Brickell Avenue
     Suite 650
     Miami, FL 33131