UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 07-21934-CIV-GOLD/WHITE

JOSHUA D. CLARKE,

     Petitioner,

vs.

WALTER A. McNEIL,

     Respondent.

_____/

**OMNIBUS ORDER ADOPTING AND AFFIRMING IN PART REPORT AND
RECOMMENDATIONS OF MAGISTRATE JUDGE [ECF No. 60]; GRANTING IN
PART PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF HABEAS CORPUS BY A
PERSON IN STATE CUSTODY [ECF No. 1]; OVERRULING OBJECTIONS
TO MAGISTRATE JUDGE'S REPORT [ECF Nos. 61, 64]; CLOSING CASE**

THIS CAUSE is before the Court upon Magistrate Judge Patrick A. White's

Report and Recommendations ("Report") **[ECF No. 60]** recommending granting in part

Petitioner Joshua D. Clarke's ("Petitioner" or "Clarke") Petition Under 28 U.S.C. § 2254

for Writ of Habeas Corpus by a Person in State Custody **[ECF No. 1]**. Respondent

Secretary of the Florida Department of Corrections[1] ("Respondent" or "the State") filed

Objections to the Report **[ECF No. 61]** and a Response to Petitioner's Objections **[ECF

No. 66]**. Petitioner filed Objections to the Report **[ECF No. 64]** and a Response to

Respondent's Objections **[ECF No. 63]**.

_____

[1] Judge White noted that pursuant to Federal Rule of Civil Procedure 26(d)(1), the
designation of Respondent should "automatically" be substituted based on the identity
of the Secretary of the Florida Department of Corrections. **[ECF No. 39 ¶ 2]**. To the
extent the parties' briefs identify the Secretary by name, I refer to the Secretary as
"Respondent" or "the State."

1

On November 10, 2010, Respondent filed a Notice of Supplemental Authority for which it intended to rely upon at oral argument. **[ECF No. 67]**. In response to my November 12, 2010 Order Requiring Response from Petitioner **[ECF No. 68]**, Petitioner filed a response addressing Respondent's cited authority on November 16, 2010. **[ECF No. 69]**. Oral argument was held on November 19, 2010. For the reasons stated on the record and having heard argument on the parties' respective positions, I concluded that additional information on the issues raised by the pleadings and discussed at the hearing was necessary, especially in light of complexities regarding sentences Petitioner is currently serving for violations of probation relating to other offenses. Accordingly, the parties submitted supplemental information as directed, and I reviewed this material in coming to my conclusions in this Order. See **[ECF Nos. 71, 72]**.

Having reviewed the Report, parties' Objections and Responses thereto, and applicable case law, and having heard the parties' positions at oral argument, I agree with the Judge White's Report insofar as it recommends conditionally granting habeas relief. To the extent that the Report recommends any immediate release of Petitioner from his current incarceration and to the extent the Report suggests Respondent's ability to file an amended information to charge and retry Petitioner, I decline to adopt this portion of the Report and leave this determination for the state court as set forth more fully *infra* §§ V.C-D. Accordingly, I ADOPT AND AFFIRM IN PART Magistrate Judge White's Report and Recommendations, GRANT IN PART Clarke's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, and OVERRULE the parties' Objections to the Report, effectively CLOSING this case.

2

I.    **Background[2]**

    A.    **Factual summary of underlying offenses**

On June 10, 1999, five forklift operators employed at a Publix Warehouse met at a nearby Shell gasoline station to relax before going home after their work day had ended.  **[ECF No. 44, p. 206-208, 235-37, 288-90, 312-14]**.[3]  A friend of one of the forklift operators also joined the group.  *Id.* at 301-03.  Shortly thereafter, two unknown individuals dressed in blue coveralls approached the group and demanded that the men hand over their valuables.  *Id.* at 212-14, 237-42, 264-65, 290-95, 303-05, 314-16.  One of the perpetrators carried a shotgun while the other carried a blue bag.[4]  *Id.*  After collecting property from the six men, the robbers decided to check the victims' cars for property.  *Id.* at 215-16, 242, 295-96, 316.  As the gunman turned toward one of the cars, one of the group members, Joseph Eaford, pulled out a firearm that he had hidden on his person and opened fire upon the robbers.  *Id.* at 243, 272, 296-97, 306.  The gunman returned fire, striking four of the group members with shotgun pellets.  *Id.* at 217, 243-44, 273-74, 297.

Both assailants took off on foot and the police arrived soon after.  Tr. at 244, 297, 318, 320-21.  Some time after the subject incident, police officers were dispatched to an

---

[2] While some citations refer to the Report, I have conducted a thorough and independent review of the record to verify that the factual summary contained herein is supported by record evidence.  The Report also cites the four-volume underlying trial transcript, which was conventionally filed and which I reviewed.  **[ECF No. 60(b), fn. 4]** (citing **[ECF No. 44]**).

[3] Citations referring to the trial transcript conventionally filed at **[ECF No. 44]** are indicated as "Tr."

[4] Throughout trial, counsel and witnesses referred to the two individuals as the "gunman" (Rolle) and the "bagman" (Petitioner).

apartment complex in the vicinity of the gasoline station where the robbery occurred in order to investigate a shooting. *Id.* at 333-39. The officers found Petitioner and Cubrill Rolle there, alleged victims of a robbery. *Id.* at 333-39. Rolle was wearing a blue coverall and was seriously injured with a gunshot wound to the ankle. *Id.* at 334-35, 344. Petitioner was wearing an orange and white shirt and jeans, and was shot in the buttocks. *Id.* at 334, 337. Although the identifications were conflicting, several victims identified Petitioner as the perpetrator holding the bag and Rolle as the armed perpetrator. *Id.* at 246-47, 277-78, 280, 299, 307, 308.

## B. Charges

On July 1, 1999, Petitioner and Rolle were charged by information with six counts of robbery using a deadly weapon in violation of Fla. Stat. §§ 812.13(2)(A) & 777.011 (Counts 1-6) and four counts of felony causing bodily injury in violation of Fla. Stat. §§ 782.051(1) & 777.011 (Counts 7-10) in case number F99-19708B. **[ECF No. 14]** (Volume I of Respondent's Appendix at P1-10).[5]  Petitioner was on probation in case number F95-37367 when criminal charges were filed against him in case number F99-19708B. *Id.* at 11-13. Count 7 alleged that on or about June 10, 1999, Petitioner and Rolle:

> did unlawfully and feloniously perpetrate or attempt to perpetrate a felony to wit:  robbery and did commit, aid, or abet an act that causes bodily injury to another, to wit:  WILLIAM RUSH, by SHOOTING WILLIAM RUSH, and during the commission of said felony, the defendants carried, displayed, used, threatened, or attempted to use a firearm, in violation of § 782.051(1) and § 777.011, Fla. Stats, contrary to the form of the Statute . . . .

---

[5] Citations referring to Respondent's Appendix (Volumes I and II) conventionally filed at **[ECF No. 14]** are indicated as they are marked in the appendix "P [page number]."

4

*Id.* at 7.  Counts 8, 9, and 10 contained allegations identical to those in Count 7, except that they named Joseph Eaford, Caven Morgan, and Ronald Starks, as the victim, respectively.  *Id.* at 8-10.

### C.    Florida Statute § 782.051

In October 1996, the Florida Legislature enacted Fla. Stat. § 782.051, which created the offense of "Felony causing bodily injury."  *See* Fla. Laws 1996, ch. 96-359, § 1.  Section 782.051(1), entitled "Felony causing bodily injury" provided in pertinent part:

> (1)    Any person who perpetrates or attempts to perpetrate any felony enumerated in s. 782.04(3) and who commits, aids or abets an act that causes bodily injury to another commits a felony of the first degree, . . .

Former Fla. Stat. § 782.051(1) (West Supp. 1996).

In 1998, the Florida Legislature rewrote Section 782.051 and retitled it "Attempted felony murder."  *See* Fla. Laws 1998, ch. 98-204, § 12 at 1970.  Section 782.051(1) now states, in pertinent part:

> (1)    Any person who perpetrates or attempts to perpetrate any felony enumerated in s. 782.04(3) and who commits, aids, or abets an **intentional** act that **is not an essential element of the felony and that could, but does not, cause the death of another** commits a felony in the first degree,. . .

Fla. Stat. § 782.051(1) (West Supp. 1998) (emphasis added).

5

## D. "Sleeping" juror

The case proceeded to trial[6] and following closing arguments, the trial court called a brief recess. *See* Tr. at 512. After the recess, but before the jury returned to the courtroom, the trial court stated as follows:

Myself and several of my staff noticed that Number 3 Juror, Mr. Guerrero, during closing arguments, particularly during the State's closing arguments was completely asleep. Not dozed off, but his eyes closed. And I guess he realized – he tried to perk himself up, and he began to lean forward against the front row. Just an observation. OK? I am not asking anything. I just wanted to inform you that that was observed by myself, and I believe by [the court reporter] and by my judicial assistant, Ana, in the back.

*Id.* The trial court then asked the State if it had any comment with regard to the specific juror, and the prosecutor responded: "I saw him doing some nodding, but maybe it says more about the boring nature of my closing argument. He seemed to be alert during evidence last week, so I don't have a problem. If you want to individually bring him in and ask him a question." *Id.* at 514. When the court asked Petitioner's trial counsel if he had any comment with regard to the juror, trial counsel responded: "No." *Id.* The trial court declined to individually question the subject juror, stating "I'm not going to embarrass him that way." *Id.*

## E. Conclusion of trial

On the felony causing bodily injury counts, the trial court instructed the jury as follows:

Before you can find the defendant. Mr. Clarke, guilty of felony causing bodily injury, which is charged in Count VII, Count VIII, Count IX and

---

[6] Although the Information named two individuals, Petitioner and Rolle were not tried at one trial and Petitioner was tried first. *See* **[ECF No. 73, 10:15-20]**.

6

Count X of the Information, the State must prove the following two elements beyond a reasonable doubt:

Joshua Clarke did commit, aid or abet an act that caused bodily injury to the following gentlemen: Joseph Eaford, and/or Ronald Starks, and/or William Rush, and/or Caven Morgan.

Two, Joshua Clarke did that act while engaged in the perpetration of or in an attempt to perpetrate any robbery.

Tr. at 520:5-14; see also **[ECF No. 71, p. 7]**.

On or about May 24, 2001, Petitioner was convicted following a jury trial of six counts of attempted robbery (a lesser included offense) and four counts of felony causing bodily injury. P14. The trial court's judgment expressly states that Petitioner was tried and found guilty on Counts 7-10 of the crime of "FELONY CAUSING BODILY INJURY," in violation of Fla. Stat. § 782.051(1). Id. On July 16, 2001, the trial court sentenced Petitioner to five years imprisonment on the attempted robbery convictions (Counts 1-6) and a term of natural life on the convictions of felony causing bodily injury (Counts 7-10). Id. at 15-16.

### F.    Appeals in state court

Petitioner was permitted to pursue a belated direct appeal[7] wherein he raised the following sole claim:

Fundamental error occurred where the trial court failed to instruct the jury of an essential element of felony causing bodily injury, in violation of the defendant's rights under article 1, section 9 of the Florida Constitution and the 14th Amendment of the United States Constitution.

_____

[7] The Third District Court of Appeal granted Clarke's petition for a belated appeal because his attorney at trial, a private attorney, did not notify the Public Defender's Office (who was appointed by the trial court for the purposes of appeal) of the appointment, causing a failure of Clarke's timely notice of appeal. P17-19.

*See* **[ECF No. 14]** (Initial Brief of Appellant, Volume I of Respondent's Appendix at P20-34). Petitioner contended that the trial court failed to instruct the jury that the intentional act causing the injury must not be an essential element of the underlying felony—in this case, robbery or attempted robbery. *Id.* The Florida Third District Court of Appeal affirmed the convictions and sentences in a *per curiam* decision without written opinion, *sub nom. Clark v. State*, 842 So. 2d 119 (Fla. 3d DCA 2003) (table).[8]

Following the conclusion of the direct appeal proceedings, Petitioner sought collateral relief in the state trial and appellate courts. Petitioner proceeded *pro se*, challenging his convictions and sentences pursuant to Fla. R. Crim. P. 3.800 and 3.850. Petitioner's *pro se* Rule 3.850 motion raised the same claims regarding the "sleeping" juror as he does in the instant petition. *See* P72-75. The trial court rejected Petitioner's claims, noting that:

> the only behavior of Juror #3 that was noted on the record was that his eyes were closed. At Page 512, Line 19, the Court specifically noted that he had not "dozed off." Additionally, at Page 514, Line 5, it was noted that Juror #3 had been continuously alert during the presentation of evidence during the previous week of trial. Based upon the foregoing matters in the trial transcript, the defendant's claim on these two issues is denied without further hearing.

*Id.* at P81 (Order Denying Defendant's Motion for Post-Conviction Relief at 1).

Petitioner also filed a state petition for writ of habeas corpus. However, in sum, Petitioner's post-conviction challenges were unsuccessful. *See e.g.*, Order Denying Motion to Correct Illegal Sentencing Error (Volume II of Respondent's Appendix at

---

[8] Although I recognize that Petitioner's name is misspelled in the caption of his appeal before the Third District Court of Appeal, I use the above-referenced citation pursuant to Bluebook Rule 10.2.1. *See The Bluebook: A Uniform System of Citation* R. 10.2.1, at 89 (Columbia Law Review Assoc'n *et al.* eds., 19th ed. 2010).

P368); Order Denying the Defendant's Motion for Post-Conviction Relief at 1 (Volume I of Respondent's Appendix at P81); *Clarke v. State*, 925 So. 2d 1033 (Fla. 3d DCA 2006) (table); *Clarke v. State*, 959 So. 2d 736 (Fla. 3d DCA 2007) (table). Following Petitioner's unsuccessful attempts to challenge his convictions and sentences, Petitioner filed the motion for habeas relief.

## II.    Procedural history

On July 27, 2007, Petitioner, a current inmate of the Florida penal system, filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. **[ECF No. 1]**.[9]   Clarke's petition attacks his convictions and sentences entered in Case No. 99-19708 in the Circuit Court of the Eleventh Judicial Circuit of Florida, at Miami-Dade County, the underlying facts of which are discussed *supra* § I.

Although Petitioner proceeded *pro se* when he initially filed his petition, Judge White subsequently appointed counsel to represent Petitioner in this matter. **[ECF No. 50]**. Judge White also required further briefing[10] and indicated his concern with two of

_____

[9] The petition was initially dismissed as time-barred on February 7, 2008. **[ECF Nos. 19, 21]**. Following dismissal, Petitioner filed an appeal to the Eleventh Circuit Court of Appeals. **[ECF No. 22]**. While the appeal was pending, the Supreme Court decided *Jimenez v. Quarterman*, 129 S.Ct. 681, 686 (2009) (holding that "where a state court grants a criminal defendant the right to file an out-of-time direct appeal during state collateral review, but before the defendant has first sought federal habeas relief, his judgment is not yet 'final' for purposes of §2244(d) (1)(A)."). On May 7, 2009, the Eleventh Circuit reversed the dismissal of the petition and remanded the case for further proceedings in light of *Jimenez*. *Clarke v. Department of Corrections of Florida*, 566 F.3d 1278 (11th Cir. 2009); *see also* **[ECF No. 35]**. I subsequently re-referred this case to Judge White for a supplemental Report and Recommendation on the Petition, considering the Eleventh Circuit's mandate and *Jiminez*. **[ECF Nos. 37, 38]**.

[10] On August 27, 2010, Petitioner complied with Judge White's order requiring further briefing and filed a Memorandum of Law and Fact. **[ECF No. 55]**. Respondent filed a response to the Memorandum **[ECF No. 58]**, and Petitioner filed a Reply **[ECF No. 59]**.

Petitioner's claims—Petitioner's argument that felony causing bodily injury was a nonexistent offense when Petitioner was charged with that offense in Counts 7 through 10 of the Information and, therefore, Petitioner's due process rights were violated when he was convicted and sentenced for committing the offenses. *Id.*

## III.   Standard of review

Pursuant to Federal Rule of Civil Procedure 72(b), which governs dispositive motions referred to a magistrate judge, "a party may serve and file specific written objections to the proposed findings and recommendations" of a magistrate judge on a dispositive motion "[w]ithin 14 days after being served with a copy of the recommended disposition." Fed. R. Civ. P. 72(b)(2); *see also* S.D. Fla. Mag. R. 4(b). If objections are timely filed, the district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to. *Id.* While the standard of review is *de novo*, a district judge need not re-assess every single finding and determination, for "the statute permits the district court to give to the magistrate's proposed findings of fact and recommendations 'such weight as [their] merit commands and the sound discretion of the judge warrants' "without violating a party's due process rights, "so long as the ultimate decision is made by the district court." *U.S. v. Raddatz*, 447 U.S. 667, 683 (1980) (citing *Mathews v. Weber*, 423 U.S. 261, 275 (1976)).

Upon review of the magistrate's decision, the district judge may accept, reject, or modify the recommended disposition, receive further evidence, recall the witnesses, or return the matter to the magistrate judge with instructions.  28 U.S.C. § 636(b)(1).

In addition to the Report and the parties' Objections and responses thereto, I have considered the arguments of the parties as set forth in the supplemental briefing required by Judge White.

10

Further, a district judge does not abuse his discretion in either considering or refusing to consider an "argument that was not presented to the magistrate judge." *Williams v. McNeil*, 557 F.3d 1287, 1290-91 (11th Cir. 2009).

## IV. Applicable law

On April 24, 1996, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. 104-132, 110 Stat. 1214, was signed into law. Since this action was filed subsequent to the effective date of AEDPA, I analyze Petitioner's claims under 28 U.S.C. § 2254(d), as amended by AEDPA. *Nelson v. Alabama*, 292 F.3d 1291, 1294-95 (11th Cir. 2002).

A federal court may issue a writ for habeas corpus relief only if the state court's ruling "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2); *see also Williams v. Taylor*, 529 U.S. 362 (2000). For a writ to issue because the state court made an "unreasonable determination of the facts," the petitioner must rebut "the presumption of correctness [of a state court's factual findings] by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Gilliam v. Sec'y for the Dep't of Corr.*, 480 F.3d 1027 (11th Cir. 2007).

## V. Analysis

Clarke raises the following four claims in his Petition:

(1) The trial court committed fundamental error by allowing a sleeping juror to remain on the jury panel.

11

(2) Petitioner received ineffective assistance of trial counsel, because his counsel failed to protect his constitutional right of a fair trial by a jury of his peers.

(3) The offense of felony causing bodily injury is a nonexistent offense, and therefore Petitioner's sentence is unlawful.

(4) Petitioner's due process rights were violated, because he was convicted of a non-existent crime—felony causing bodily injury.

**[ECF No. 60]**; *see also* **[ECF No. 1]**.

After a thorough review of the record and the applicable law, Magistrate Judge White determined in his Report that Clarke's habeas petition should be granted "because adjudication of the claims by the state courts was contrary to clearly established federal law and involved an unreasonable application of clearly established federal law." **[ECF No. 60, p. 21]** (citations omitted). Specifically, Judge White concluded that Petitioner's constitutional rights were violated in connection with the convictions and sentences entered as to Counts 7-10. *Id.* at p. 2. The Report recommends conditionally granting the petition and issuing the writ, requiring Petitioner's release from imprisonment—unless Respondent retries Petitioner within ninety days on any and all appropriate criminal charges. *Id.*

Respondent objects to the Report on the basis that failure to adequately allege a necessary element of the charged offense does not amount to error under Florida state law or federal law. **[ECF No. 61]**. However, Respondent simultaneously concedes that the Information did not allege the element of intent.[11] *Id.* at 13. Despite this position,

---

[11] As discussed in greater detail *infra* § V, the mere failure of the Information to allege the element of intent does not, by itself, warrant habeas relief in this case. Rather, this error was only the tip of the iceberg with respect to the overall failure to plead, prove, and ultimately prove beyond a reasonable doubt all the requisite elements of the amended Fla. Stat. § 782.051 which was in effect at the time Petitioner was charged, convicted, and sentenced.

12

Respondent nonetheless argues that intent was not a disputed element and therefore, habeas relief is improper.

Petitioner objects to the Report insofar as it fails to recommend his immediate release. **[ECF No. 64, p. 2]**. Petitioner also objects to the Report to the extent that it concludes that Petitioner may possibly be retried if charged properly. *Id*. Petitioner's position on the latter point is grounded in the argument that the four-year statute of limitations applicable to first degree felonies such as attempted felony murder has already expired pursuant to Fla. Stat. § 775.15(2)(a).

While I make no finding with respect to Petitioner's argument on whether he can be retried by the State under the amended version of Section 782.051(1), I overrule Petitioner's objection regarding immediate release as set forth more fully *infra* § V.C. I also independently determine that, contrary to Respondent's argument, the requisite element of intent was not undisputed. For the reasons discussed in further detail herein, I agree with Judge White's Report that the first two claims of fundamental error and ineffective assistance of counsel are without merit. I further determine that the Report correctly concludes that the latter two claims of unlawful sentence and due process rights violation are proper bases for granting Petitioner's habeas relief.

## A.    Fundamental error and ineffective assistance of counsel

Petitioner claims that the trial court committed fundamental error by allowing a sleeping juror to remain on the jury panel. In a related argument, Petitioner claims he received ineffective assistance of trial counsel because his attorney failed to protect his constitutional right to a fair trial by a jury of his peers by taking no action with regard to

13

the sleeping juror. I determine that Judge White correctly concluded that these claims are without merit.

In order to establish ineffective assistance of counsel, Petitioner must show that counsel's performance was deficient and demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. 668, 694 (1984). Counsel's performance is deficient only if it falls below the wide range of competence demanded of attorneys in criminal cases. *Id.* at 688; *Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991). The relevant question "is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Knowles v. Mirzayance*, 129 S.Ct. 1411, 1420 (2009) (citations omitted). "Courts must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment." *Chandler v. United States*, 218 F. 3d 1305 (11th Cir. 2000).

In *Hagan v. McDonough*, 2006 U.S. Dist. LEXIS 85583 (M.D. Fla. Nov. 27, 2006), a *pro se* inmate of the Florida penal system filed a petition for writ of habeas on similar grounds, claiming ineffective assistance of counsel based on counsel's failure to advise the trial court of sleeping jurors. The court in *Hagan* agreed with the trial court's conclusion finding no ineffective assistance of counsel where it was unclear whether the jurors were actually asleep during closing arguments. *Id.* at *52-57.

14

Petitioner's claims of fundamental error and ineffective assistance of counsel are unsubstantiated from a review of the record. As Judge White noted in his Report, the record demonstrates that one juror may have closed his eyes, or possibly even been asleep, for a brief period of time during a portion of the closing argument and "particularly during the State's closing arguments." Tr. at 512:17-24. Even assuming *arguendo* that the juror was asleep, the trial court noted that this occurred during the State's closing argument, and not closing arguments presented by Petitioner's counsel. Petitioner fails to explain how Petitioner would be prejudiced if the juror fell asleep during the State's closing argument. Further, the trial court itself determined that it was unnecessary to question the juror and inquired of all counsel whether they had any remarks with respect to this issue. As recognized by the trial court in denying the Rule 3.850 motion, the trial court noted that the juror had "not dozed off." P72-75. More importantly, as Judge White correctly sets forth in the Report, Petitioner has presented no evidence that the juror was asleep during the evidentiary portion of the trial. The Report also recognizes the deference to an attorney's performance and any strategic decisions on the part of counsel not to raise such an issue. *See* **[ECF No. 60, p. 11]**.

Petitioner has not demonstrated a reasonable probability that the outcome of his case would have been different if his counsel had taken any action with regard to the "sleeping" juror and provided the assistance that Petitioner claims counsel should have provided. Accordingly, I agree with Judge White's determination that the state courts properly denied Petitioner post-conviction relief on his claims regarding the sleeping

juror and ineffective assistance of counsel. Therefore, Clarke's petition with respect to the first two claims of fundamental error and ineffective assistance of counsel is denied.

## B.    Non-existent offense

Although I find that the fundamental error and ineffective assistance of counsel arguments with respect to the sleeping juror are insufficient to grant habeas relief, Petitioner's alternate grounds for relief present more significant concerns. Petitioner argues that felony causing bodily injury was a non-existent offense, for which he was wrongly convicted and sentenced as to Counts 7-10 of the Information. Specifically, Petitioner maintains that he was arrested in June 1999, of offenses committed in June 1999. Petitioner correctly notes that one year earlier, in 1998, Florida abolished the offense of felony causing bodily injury in Fla. Stat. § 782.051. Respondent does not dispute that the amended version of Fla. Stat. § 782.051, entitled attempted felony murder, was in effect at the time Petitioner was charged, convicted, and sentenced. Nor does Respondent disagree that the amended Fla. Stat. § 782.051 required a finding of intent. Rather, Respondent's position is that intent was not in dispute, and therefore, Petitioner's convictions and sentences for Counts 7-10 should stand. I begin my analysis of the "non-existent offense" claim with a review of the legislative history and a comparison of the prior and amended versions of Fla. Stat. § 782.051.

### 1.    Legislative history

Senate Bill Number 1522, which became law on May 24, 1998, amended Fla. Stat. § 782.051 to eliminate the offense of felony causing bodily injury and to establish the offense of attempted felony murder. According to the Criminal Justice and Ways

16

and Means Committee staff analysis, "Senate Bill 1522 substantially amends, creates or repeals § 782.051." Chapter 98-204 of the Laws of Florida notes that Senate Bill 1522 "amend[s]" Section 782.051, by:

> revising the elements of the offense of committing a felony that causes bodily injury to provide that if a person who perpetrates or attempts to perpetrate certain enumerated felony offenses and who commits, aids, or abets an intentional act that could, but does not, cause the death of another, the person commits a first-degree felony; providing for ranking such offense under the Criminal Punishment Code based on the felony offense committed[.]

Thus, the requirement of an actual bodily injury was removed, and in its place, the State was required to prove that during the course of a felony, Petitioner committed an intentional act, which was not an essential element of the underlying felony (*i.e.*, attempted robbery). The State also bore the burden to prove that the intentional act could, but did not, cause the death of another person. Although the statutory number (782.051) still existed in its original form, it is undisputedly clear that the required elements were distinct and separate following amendment of the statute.

## 2. Information

As a preliminary matter, the charging document in Petitioner's underlying criminal case contains references to Fla. Stat. § 782.051. The question then becomes whether these references are, as Respondent claims, sufficient to put Petitioner on notice of the crime under which he was charged. For the reasons stated *infra*, I agree with Judge White's conclusion that the mere fact that the Information specified the correct charging statute does not cure the fundamental defects present in this case. *See* **[ECF No. 60]** (citing *Cole v. Arkansas*, 333 U.S. 196, 201 (1948) ("No principle of procedural due

17

process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal.").

The Information is dated July 1, 1999. P1. At the time of Petitioner's June 10, 1999 offense date, the new statute had been in effect for eight months. By the July 1, 1999 date of the information, the new statute was in effect for nine months. When the trial commenced on March 7, 2001, over two years and five months had elapsed since the amended Section 782.051 became effective. Although Respondent correctly notes that the statute is identified as "782.051," the Information specifically contains the phrase "Felony Causing Bodily Injury" relating to Counts 7-10. The Information was never amended after Petitioner was charged to include the new statute. The failure of the Information to specify the correct amended version of Fla. Stat. § 782.051 represents the first of various errors that were compounded by the fact that the entirety of the underlying proceedings operated under the previous "felony causing bodily injury" version of Fla. Stat. § 782.051.

Respondent concedes in its Objections to the Report that the Information did not allege all elements of the new offense. **[ECF No. 61, p. 9]** ("Not only did the information cite to the correct statute number but it also alleged <u>almost all</u> of the elements of the new offense . . . Although the information <u>partially alleges the incorrect elements</u> . . ."; emphasis added); *see also id.* at 10 ("The charging document in this case, while drafted for the predecessor version, still alleged <u>some</u> of the elements . . ."; emphasis added).

18

In fact, Respondent acknowledges that the Information fails to allege intent. *Id.* ("The only element which the information fails to allege is the element of intent.") However, Respondent's position is that notwithstanding the failure of the Information to allege intent, and the absence of intent from the instructions read to the jury, such omissions do not support habeas relief. Unfortunately, the fact that "almost all" elements were alleged and the Information "partially allege[d]" only "some" of the elements is simply insufficient grounds to deny Clarke's petition, especially when considering the fact that the missing element of intent was not undisputed. *See infra* § V.B.4.

### 3. Effect of charge under repealed statute

Defendants have a fundamental right "'to have a Court correctly and intelligently instruct the jury on the essential and material elements of the crime charged and required to be proven by competent evidence.'" *Delva*, 575 So. 2d at 644 (quoting *Gerds v. State*, 64 So. 2d 915, 916 (Fla. 1953)). However, if a court fails to include all essential elements in a jury instruction and the defendant does not object at trial, the omission "can be raised on appeal only if <u>fundamental error</u> occurred." *Id.* at 644 (emphasis added). Fundamental error is "'error [which] reach[es] down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error.'" *Id.* at 644-45 (quoting *Brown v. State*, 124 So. 2d 481, 484 (Fla. 1960)). Fundamental error only occurs when "'the omission is pertinent or material to what the jury must consider in order to convict.'" *Id.* at 645 (quoting *Stewart v. State*, 420 So. 2d 862, 863 (Fla. 1982)). Further, omitting a

necessary element of the crime from the instructions "over which the record reflects there was no dispute" is not fundamental error. *Id.* at 645.

Failure to instruct the jury on an essential element of the offense is not fundamental error if the element was undisputed and established by record evidence. *See, e.g., Battle v. State*, 911 So. 2d 85, 89 (Fla. 2005). Failing to include the phrase "that was not an essential element of the felony" in the attempted felony murder jury instructions was erroneous because an essential element of the crime charged was omitted. *Id.* However, the omission in *Battle* was not fundamental error because the omitted element was not in dispute. *Id.*

Unlike *Battle*, the omitted element here—intent—is disputed. The record reveals, and Respondent concedes, that the trial court instructed the jury based on the former version of Fla. Stat. § 782.051. *See* [ECF No. 43, p. 36]. The record and trial transcript unambiguously demonstrate that trial court, counsel, parties, and jury repeatedly referred to and generally operated under the premise that the charged offense was felony causing bodily injury, and not attempted felony murder. In addition to the fact that the Information referred to "Felony Causing Bodily Injury," in closing arguments, both the State and counsel for Clarke referenced the offense of Felony Causing Bodily Injury. *See* Tr. 470-512. As described *supra* § I.E, the trial court instructed the jury under the prior version of Fla. Stat. § 782.051. Even Respondent's briefs suggest an admission that Petitioner should have been charged with the amended attempted felony murder offense. Petitioner correctly notes that the revised Section 782.051 requires the

20

additional element of an "intentional act that is not an essential element of the felony and that could, but does not, cause the death of another."

### 4.    Intent

As set forth *supra*, Senate Bill 1522 amended Fla. Stat. § 782.051 such that the State no longer had to prove actual injury, but it did have to prove an intentional act. Respondent urges that the element of intent was satisfied simply by virtue of the gunshots fired during the course of the alleged attempted robbery. *See* **[ECF No. 43, p. 35]**.[12] Respondent's position is that "[t]hese gunshots were also clearly intentional acts which were not essential elements of the attempted robbery." *Id.*    Respondent reiterated this reasoning at oral argument. *See* **[ECF No. 73, 15:3-5]** ("it's the State's position that it was never disputed that the codefendant intended to discharge the shotgun which was discharged multiple times."); *id.* at 14:16-20 ("that's the State's position, that it was never at issue or disputed that the codefendant intended to fire the shotgun and therefore failure to instruct on that element of the offense does not constitute, under Florida law, what we call fundamental error."). However, a thorough review of the record reveals ambiguity as to whether the gunshots were actually intentional or merely inadvertent. Therefore, a key issue is whether intent was disputed.

Petitioner suggested that the issue of intent was never raised because Petitioner was not on notice that this was a required element of Fla. Stat. § 782.051. Although counsel for Petitioner stated at oral argument that there was "nothing in the record" that

---

[12] The evidence presented at trial suggested that the roles of the defendants were as follows:  Petitioner was the "bagman" while his co-defendant Rolle was the "gunman." This is consistent with the jury's verdict finding that Petitioner was guilty as to the offenses of felony causing bodily injury as charged in Counts 7-10 of the Information without a firearm. *See* P126-129.

reflects a suggestion by Petitioner at the trial that the shotgun was fired was by mistake or accident **[ECF No. 73, 15:15-25]**, my independent review of the record demonstrates otherwise. One particular area of testimony raises a factual question of whether the gunman (Petitioner's co-defendant Rolle)[13] intended to fire shots at the group.

Joseph Eaford, one of the victims who carried a weapon with him, testified that on the evening of the incident, he did not consume alcohol, unlike some of the other men who met at the Shell gasoline station and testified regarding their account of the evening. T 263:13. Eaford testified that while he fired shots at the perpetrators, shots were fired in return by the gunman. *Id.* at 273:11-17. Specifically, Eaford testified that "[t]he gunman just happened to have his hand or finger on the trigger. And, I guess, just by reflex, he pulled it when he heard my gun go off." *Id.* at 273:20-22 (emphasis added). Eaford's testimony that the gunman (Petitioner's co-defendant Rolle) pulled the gun by "reflex" upon hearing Eaford's gun discharge suggests that there was no requisite intention to fire the weapon, putting the issue of intent squarely in dispute. Accordingly, based on this witness' testimony, there arises a question regarding intentionality necessary for the commission of attempted felony murder.

Respondent concedes that the element of intent was not included in the Information or in the jury instructions. **[ECF No. 73, 18:10-12]**. Respondent also acknowledges that following the amendment of Fla. Stat. § 782.051, "the State no longer had to prove actual injury, **but it did have to prove the intentional act** . . . ." **[ECF No. 43, p. 35]**; *see id.* (identifying gunshots as intentional acts). Portions of the

---

[13] Part of Petitioner's defense at trial was that Rolle was the primary actor and Petitioner was not responsible. **[ECF No. 73, 10:21-25]**.

record raise the question about intentionality and introduce issues that I cannot resolve on habeas review because they involve issues of fact and credibility. The jury was not instructed on intent, which was an essential element of the offense. Further, the omission constitutes fundamental error because intent was in dispute based on a review of the record. Based on a review of the record, I determine that it is not clear that intent—a requisite element of the amended Fla. Stat. § 782.051 attempted felony murder charge—was undisputed. Therefore, Petitioner is entitled to habeas corpus relief under 28 U.S.C. § 2254(d) because an essential element of the operative amended Fla. Stat. § 782.051 (intent) was not undisputed and Petitioner was convicted of a nonexistent offense, violating federal due process principles.

## C.    Immediate release

In my independent review of the record, I discovered that neither the parties nor the Report address the critical issue of trial court's sentencing of Petitioner to 20 years imprisonment for two violations of probation in two prior cases. On May 28, 2004, Respondent filed a Response to Petitioner's Motion to Correct Sentence attaching portions of the transcript from Petitioner's May 16, 2001 sentencing hearing. *See* P56-59. The transcript indicates that Petitioner was sentenced to the following:

(1)    Counts VI, VII, IX, and X[14] – life term, concurrent, with each count to each other;
(2)    Counts I, II, II, IV, V, and VI – five years in each count, concurrent with each other and with life sentence imposed in Counts VII through X;
(3)    Violation of probation in Case No. F95-37367 – five years, consecutive to the sentence in Case No. 99-19708; and

---

[14] This is presumably a typographical error because Counts 7-10 (VII, VIII, IX, X) were the offenses charged under Fla. Stat. § 782.051(1).

> (4) Violation of probation in Case No. F95-007126-F – fifteen years, consecutive to sentences imposed in Case Nos. 99-19708 and F95-37367.

P59. Thus, in addition to the life term, Petitioner was sentenced to a total of 25 years for Counts 1-7 and his probation violations.

I opened oral argument with this issue, asking the parties to clarify the exact status of Petitioner's release in light of the sentences imposed for violations of probation for prior crimes. *See* **[ECF No. 71, p. 1]**. The State represented that the Department of Corrections indicated that "the defendant's sentence of 15 years and the five-year sentences have already expired. The only sentence that [Petitioner is] currently serving is the life sentence. Because of gain time and other issues, those sentences have already expired." *Id.* at 4:11-15. Petitioner's sentence was August 2001. *Id.* at 5:9. I questioned how Petitioner could be subject to gain time, good behavior credits, and additional considerations for a 25-year sentence that was set to expire in the year 2026. *Id.* at 29:22-30:4. Further, the trial court did not discuss time served or any other credits toward the imposition of sentences for probation violations.[15] *Id.* at 6:17-21. Based on the fact that this issue needed to be very carefully reviewed for determination of Petitioner's potential release, and because neither the parties nor the Report addressed this matter, I determined that the parties needed to provide further briefing regarding calculations of Petitioner's sentences.

---

[15] The trial court stated at sentencing, in relevant part: "As to violation of probation case in F95-37367, I find you in violation of that probation and sentence you to five years in the state penitentiary. This sentence is to run consecutive to the sentence that the Court imposed on Case 99-19708. As to the last probation case, F95-007126-F, I hereby sentence you to 15 years in the state penitentiary, the sentence to run consecutive to the sentences that I've just imposed on 95-37367 and 99-19708-B." P59.

24

Following oral argument, Respondent filed an affidavit of a Correctional Services Administrator in the Florida Department of Corrections.  **[ECF No. 72]**.  The affidavit indicated that Petitioner's sentences in the prior cases, 15 years in 95-7126 and 5 years in 95-37367 (consecutive to the sentence in 95-7126) are tentatively set to expire on March 10, 2011, with a maximum release date of February 4, 2013—in contravention of the representation at oral argument that Petitioner's sentences had already expired. **[ECF No. 72]**.  Accordingly, although Petitioner has already served five years for Counts 1-6 and is currently serving his life term for Counts 7-10, he has still not completed his sentences for violation of probation in the earlier cases.  This affects Judge White's Report to the extent that the Report recommends Petitioner's immediate release from prison, as Petitioner is still serving his sentences for violations of probation in prior cases.

In sum, Petitioner's immediate release is wholly improper at the moment because he remains incarcerated on sentences for probation violations in prior cases which are not at issue in the instant habeas relief.  Accordingly, any release of Clarke as a result of the petition in this case must only occur subsequent to Petitioner's completion of the sentences at issue in cases F95-37367 and F95-007126-F for which he is still currently serving.

### D.     Further retrial

To the extent Judge White's Report recommends that the State take any action, I find that whether the State may proceed with a retrial is a matter of state law and an issue for determination in state court. *See* **[ECF No. 60(b), p. 2]** ("the writ should issue,

25

requiring Clarke's release from imprisonment, unless the State of Florida retries Clarke within ninety days on any and all appropriate criminal charges."). Although the parties dispute whether retrial is proper in their Objections to the Report,[16] Petitioner acknowledged at oral argument that "with respect to the relief, what petitioner is requesting is not anything that would bar a retrial by the State of Florida." **[ECF No. 73, 29:3-4]**. Accordingly, the appropriate course at this juncture is to remand this matter to the state court for:  (1) determination of whether the State may retry Petitioner and (2) resolution of all issues with respect to Petitioner's sentences in the prior cases which are tentatively set to expire on March 10, 2011, with a maximum release date of February 4, 2013, *i.e.*, when Petitioner's actual release should occur given the other sentences served. *See* **[ECF No. 72]**.

## VI.    Conclusion

Based on the foregoing, it is hereby ORDERED AND ADJUDGED that:

1.     Magistrate Judge Patrick A. White's Report **[ECF No. 60]** is AFFIRMED AND ADOPTED IN PART.

2.     Joshua D. Clarke's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody **[ECF No. 1]** is conditionally GRANTED IN PART as to the convictions and sentences entered as to Counts 7-10.

3.     Respondent Secretary of the Florida Department of Corrections' Objections to the Report **[ECF No. 61]** are OVERRULED.

---

[16] *See e.g.*, **[ECF No. 64, p. 3]** ("[Petitioner] cannot be tried by [Respondent] for the crime of Attempted Felony Murder in violation of the amended version of Fla. Stat. § 782.051(1) because the statute of limitations on that offense has run.")

4.    Petitioner Joshua D. Clarke's Objections to the Report **[ECF No. 64]** are OVERRULED.

5.    This matter is REMANDED to Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County for proceedings consistent with this order.

6.    Respondent shall file a Notice in the Circuit Court of the Eleventh Judicial Circuit indicating whether it intends to seek a retrial **within 10 days from the date of entry of this order**.

7.    This case is CLOSED.

DONE AND ORDERED in Chambers in Miami, Florida, this ___ day of February 2011.

_____
THE HONORABLE ALAN S. GOLD
UNITED STATES DISTRICT JUDGE

cc:    Magistrate Judge Patrick A. White
       Counsel and parties of record
       Clerk of the Court, Circuit Court of the Eleventh Judicial Circuit
       in and for Miami-Dade County